# United States Court of Appeals
## For the First Circuit

No. 00-1966

MANUELLA DIONISIO REED,

Plaintiff, Appellant,

v.

LEPAGE BAKERIES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. D. Brock Hornby, Chief U.S. District Judge]

Before

Boudin, Stahl, and Lynch,
Circuit Judges.

John R. Lemieux for appellant.
Peter Bennett, with whom Frederick B. Finberg and The Bennett Law Firm were on brief, for appellee.
Barbara L. Sloan, with whom C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, were on brief for Equal Employment Opportunity Commission, amicus curiae.

April 5, 2001

**LYNCH, Circuit Judge**.  Manuella Reed was fired by LePage Bakeries for insubordination and threatening her supervisor.  Reed says her conduct should be forgiven because she is mentally ill, disabled within the meaning of the Americans with Disabilities Act.  She sues on the claim that her termination resulted from LePage's failure to reasonably accommodate her disability and hence was discriminatory.  The district court granted summary judgment against Reed.  Reed appeals, and the EEOC has filed an amicus brief on her behalf on the issue of the allocation of burdens of proof in ADA reasonable accommodation cases.  We reject the position of the EEOC on this issue, find that Reed neither adequately requested nor was prevented from exercising the accommodation she now claims, and affirm.

## I.

In 1987, Reed was hired by LePage Bakeries, a large commercial baking company, as an assembly line worker.  Seven years into her employment, Reed began receiving mental health treatment.  She was eventually diagnosed with bipolar disorder,

a condition characterized by exaggerated mood swings and agitated emotional states. She has been on medication ever since. As a result of her disorder, Reed fares badly in stressful situations, and when involved in a personal confrontation, she is prone to lose her temper and become verbally abusive.

The first time Reed had such an episode at work was in March 1995. After a muffin-bagging machine broke down during her shift and a mechanic was unable to fix it, Reed flew into a profanity-infused rage, in which she angrily accused the mechanic of being incompetent. Shaken by the incident, Reed left work for the day, apparently with the permission of a manager. She quickly became depressed and, after having thoughts of suicide, had to be hospitalized for five days. On her release, according to Reed, her therapist advised her to ask her employer to accommodate her disability by allowing her to walk away from stressful situations in order to avoid losing control of herself.

After returning to work, Reed met with Mike Pelletier, the plant manager, to discuss her poor attendance record. Reed did not initiate a request for an accommodation at the meeting,

-3-

but Pelletier on his own brought up Reed's altercation with the mechanic as an aside, and told her that in the future she should walk away from such situations before they became aggravated. Reed agreed, mentioning that she had planned to propose the idea herself, and offered to get a note from her therapist if necessary. She was told it would not be. Pelletier then took Reed to meet with her floor supervisor, Jerry Norton, about the incident. Again, all agreed that Reed should walk away from any such altercation in the future; in addition, Reed was told that after walking away she should immediately get hold of either Pelletier or Norton so that they might help settle the problem.

Reed cannot recall with certainty whether she used the term "accommodation" during either of the meetings. Nor can she unequivocally remember whether or to what extent she revealed that she needed an accommodation due to her mental illness. But she did mention during the first meeting that she had a therapist, and LePage had on earlier occasions made adjustments to Reed's work schedule upon receiving notes from her therapist indicating that she was being seen for "depression." Although Pelletier and Norton knew that Reed had left work for several days after the altercation with the mechanic, they did not know

-4-

much beyond that; they thought she had left due to a heart condition or problems at home.

Reed did not have another stressful episode at work until June 1, 1996 -- the incident resulting in her termination. Having been on workers' compensation leave for a week after sustaining a work-related injury to her arm, Reed met that day with Norton and a human resources director, Cindi Callahan, to discuss her return. The meeting was pursuant to standard practice at LePage; its purpose was to determine the extent of the duties Reed would be able to assume coming off of her injury.

Upon entering the meeting, Reed stated that she wished to discuss whether she could swap shifts with another employee so that she could work in the mornings, when child care was available to her. Callahan responded that they were meeting to discuss Reed's injury-related work restrictions, not her schedule. Reed insisted on discussing scheduling arrangements; Callahan repeatedly tried to steer the conversation back to the issue of restrictions; the situation grew heated. Despite Norton's pleas that Reed calm down, Reed stood up, yelled "Fuck this," and placed her hand on the door to leave.

At that point, Callahan told Reed that she would not be able to begin working if she did not stay at the meeting and discuss her work restrictions. Reed replied, "What are you going to do, fire me?", to which Callahan answered no. Reed then yelled "Fuck you" and flew into a rage. Standing on the tips of her toes, Reed dared Callahan to fire her, telling her that if she did, Reed would sue. Callahan felt threatened by Reed's conduct.

Norton called human resources personnel to have Reed escorted from the building, but before they arrived, Reed left the room on her own volition. She then sought out Tony Nedik, head of personnel, and attempted to account for her conduct. She told Nedik that she had a mental illness that caused her to lose control of herself, that she needed an accommodation for it, and that she had tried to exercise such accommodation during the meeting but Callahan had prevented her from doing so. Reed asked if she could come back to work tomorrow; Nedik answered no. Reed was fired the next workday for insubordinate and threatening conduct.

Reed brought suit more than two years later, in December 1998. She alleges that LePage discriminated against

her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., by failing to reasonably accommodate her disability. The gist of her case is that she claims to have requested and been granted a reasonable accommodation after her March 1995 altercation with the mechanic; that accommodation, she says, consisted in permission to walk away from stressful confrontations at work, whether or not those confrontations were with co-workers or supervisors. LePage discriminated against her, Reed claims, by not allowing her to exercise that accommodation at the June 1 meeting and by firing her for attempting to do so.

LePage moved for summary judgment, arguing, inter alia, that Reed was not disabled within the meaning of the ADA, that she was never prevented from exercising any accommodation, and that in any event the accommodation she claims to have been prevented from exercising was unreasonable. The motion for summary judgment was initially reviewed by a magistrate judge, who recommended denying the motion as to these issues.

The district court, disagreeing with the magistrate as to the reasonableness of the accommodation in question, granted defendant's motion for summary judgment. The bulk of the

-7-

district court's opinion focused on whether an ADA plaintiff fully carries the burden of proving that her proposed accommodation is reasonable and, if so, how to distinguish that burden from the defendant's burden of proving that the accommodation would impose an undue hardship. Noting that this circuit has yet to rule definitively on the issue, the district court held that the plaintiff must put on some evidence that her proposed accommodation is reasonable, or at least plausible. Applying this standard to the facts of the case, the court went on to find that Reed had not put forward sufficient evidence that it was reasonable to demand an accommodation permitting her to walk away from supervisors when feeling stressed. The only evidence Reed had put forward, the court found, was that Reed's supervisors had advised her, as they commonly advised all employees, to walk away from conflict situations; but such evidence, in the court's view, went only toward showing the reasonableness of being permitted to walk away from conflicts with co-workers, not from conflicts with supervisors.

## II.

We review the district court's order de novo, "consider[ing] the facts in the light most favorable to the nonmoving party, drawing

all reasonable inferences in that party's favor." Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000).

Section 102(a) of the ADA states: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Discrimination is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

For purposes of summary judgment we accept that Reed has put forward sufficient evidence that she had a disability within the meaning of the ADA.[1] The case hinges instead on whether Reed was denied a reasonable accommodation of her disability. The district court entered summary judgment on the basis that Reed had not shown her requested accommodation was reasonable. In so holding, the court raised the question of the extent of plaintiff's burden of

---

[1] Reed offered evidence that her bipolar disorder substantially limited one or more of her "major life activities," see 42 U.S.C. § 12102(2)(A), in that it occasionally led to prolonged sleep loss, see Criado v. IBM Corp., 145 F.3d at 442-43 (1st Cir. 1998) (sleeping as major life activity).

proof on the issue.  The EEOC has filed with us an amicus brief
on this question, arguing that the district court effectively
shifted to the plaintiff the defendant's burden of proving
whether the requested accommodation would impose an undue
hardship.  This court has not clearly distinguished between
plaintiff's and defendant's burdens in ADA reasonable
accommodation cases before.[2]  We take the opportunity to do so
here.

_____

[2]  We came closest to speaking directly to this issue in
Feliciano v. Rhode Island, 160 F.3d 780 (1st Cir. 1998).  There
we said that "[t]he plaintiff, as the party who must prove that
he or she can perform the essential functions of the position
with or without reasonable accommodation, bears the burden of
showing the existence of a reasonable accommodation."  Id. at
786.  We avoided addressing the extent of this burden in
Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648 &
n.13 (1st Cir. 2000), and did not decide it in Ward v. Mass.
Health Research Inst., Inc., 209 F.3d 29 (1st Cir. 2000).
    Reed misreads Ward in arguing that the case puts the burden
of showing whether plaintiff's requested accommodation is
reasonable on the employer.  Ward did not, indeed it could not,
overrule our prior cases holding that such burden is on
plaintiff.  Garcia-Ayala, 212 F.3d at 648; Feliciano, 160 F.3d
at 786.  Ward is best understood as a case where the plaintiff's
request for a flexible schedule was facially reasonable, thus
requiring the employer to show undue hardship, an issue on which
the employer has the burden.  See id. at 36 ("Therefore,
[defendant] must submit some evidence in support of its position
that the requested accommodation would impose undue hardship.")

-10-

## A. Reasonable Accommodation vis-á-vis Undue Hardship

Under the ADA, the plaintiff bears the burden of proving that the defendant could provide a reasonable accommodation for her disability. At the same time, the statute places the burden on the defendant to show that the proposed accommodation would impose an undue hardship. See 42 U.S.C. § 12112(b)(5)(A). There is a well recognized tension in the statute's allocation of burdens in this fashion. The burdens might appear to be mirror images of one another: a "reasonable accommodation," it might seem, is simply one that does not impose an "undue hardship." But if this were so, the statute would effectively impose identical burdens on both parties.

Other circuit courts have dealt with this tension using linguistically different, but functionally similar, approaches. The first approach shifts the burden of persuasion from plaintiff to defendant, so that the burden of identifying a reasonable accommodation is only one of production. Under this approach, plaintiff's burden

> is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant."

Borkowski v. Valley Central Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995) (citation omitted). The Third Circuit has expressly utilized this test in an ADA case, see Walton v. Mental Health Assoc., 168 F.3d 661, 670

-11-

(3d Cir. 1999), and the Eighth and Tenth Circuits use a similar approach, see Fjellestad v. Pizza Hut, 188 F.3d 944, 950 (8th Cir. 1999); Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995); White v. York Int'l Corp., 45 F.3d 357, 361 (10th Cir. 1995).

The other approach, which seems to have originated with the D.C. Circuit in a Rehabilitation Act case, Barth v. Gelb, 2 F.3d 1180 (D.C. Cir. 1993), ostensibly keeps all burdens of proving reasonable accommodation on the plaintiff. See id. at 1186 ("The burden [ ] remains with the plaintiff to prove his case by a preponderance of the evidence."). This approach is followed by the Fifth Circuit, see Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 682-83 (5th Cir. 1996); the Sixth Circuit, see Hoskins v. Oakland Cty. Sheriff's Dep't, 227 F.3d 719, 728 (6th Cir. 2000); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183 & n.10, 1186 n.12 (6th Cir. 1996); the Seventh Circuit, see Vande Zande v. Wisc. Dep't of Admin., 44 F.3d 538, 542-43 (7th Cir. 1995); and the Eleventh Circuit, see Willis v. Conopco, Inc., 108 F.3d 282, 285-86 (11th Cir. 1997) (also denying that "reasonable accommodation" and "undue burden" are mirror images). Nonetheless, under this approach, the plaintiff still need only make a general or facial showing of reasonableness. See, e.g., Barth, 2 F.3d at 1187 (reasonable accommodation is "a method of accommodation that is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred

accommodation in the context of the particular [employer's] operations" (emphasis in original)), quoted in Willis, 108 F.3d at 286 n.2 and Riel, 99 F.3d at 683; Vande Zande, 44 F.3d at 542 (in proving reasonable accommodation plaintiff must make facial showing of proportionality to costs, whereupon employer, in showing undue burden, has opportunity to prove upon more careful consideration that costs are excessive).

We are reluctant to talk about the problem of the relationship between "reasonable accommodation" and "undue hardship" as one of shifting burdens.[3] We prefer to discuss the burdens of showing reasonable accommodation and undue hardship as they are allocated in the statute: the plaintiff fully bears the former, and the defendant fully bears the latter. The real issue is the quantum of proof needed

---

[3]      The burden-shifting model was introduced into employment law in order to allow indirect proof of the often elusive "intent" to discriminate. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999). Thus, burden shifting allows a plaintiff to make a small showing of discrimination, whereupon the employer must articulate a non-discriminatory reason for its actions, and if that reason proves to be untrue, then an inference of discrimination may be warranted. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981). By contrast, whether a requested accommodation is reasonable or whether it imposes an undue hardship are questions typically proved through direct, objective evidence. Accordingly, we have already held that the McDonnell Douglas model does not apply to ADA discrimination claims based on failure to reasonably accommodate. Higgins, 194 F.3d at 264. It would be confusing to import such a model into a subpart of the analysis of such claims.

to show reasonable accommodation vis-á-vis the quantum of proof needed to show undue hardship.

On this issue, we reject the position urged on us by the EEOC. In contrast to the basic approach followed by our sister circuits, the EEOC argues that the only burden a plaintiff has on proving reasonable accommodation is to show that the accommodation would effectively enable her to perform her job; whether the accommodation would be too costly or difficult, on the EEOC's view, is entirely for the defendant to prove.[4] We agree that proving an accommodation's effectiveness is part of the plaintiff's burden; but it is not the whole. Indeed, simply in explaining how her proposal constitutes an "accommodation," the plaintiff must show that it would effectively enable her to perform her job. That is precisely what an accommodation does. But what plaintiff must show further under the statute is that her requested accommodation is "reasonable." And consistent with its usage throughout the law, the concept of reasonableness here constrains the plaintiff in

---

[4] The EEOC position has not been adopted by any of the circuits, although it was advocated in a concurring opinion in Barnett v. U.S. Air, Inc., 228 F.3d 1105 (9th Cir. 2000) (en banc). See id. at 1122-23 (Gould, J., concurring).

what she can demand from the defendant. A request that the defendant relocate its operations to a warmer climate, for example, is difficult to imagine as being "reasonable." A reasonable request for an accommodation must in some way consider the difficulty or expense imposed on the one doing the accommodating. See Vande Zande, 44 F.3d at 542-43.

Thus, we believe the best way to distinguish between the two burdens is to follow in essence the lead of our sister circuits: In order to prove "reasonable accommodation," a plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances.[5] If plaintiff succeeds in carrying this burden, the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears but rather that there are further costs to be considered, certain devils in the details.

Under this arrangement, the difficulty of providing plaintiff's proposed accommodation will often be relevant both to the

---

[5] A plaintiff may sometimes be able to establish the reasonableness of a proposed accommodation by showing it is a method of accommodation that is feasible in the run of cases. But this will not always be so. ADA cases come in an amazing variety of hues and shapes, and some jobs are sui generis, so we are reluctant to set hard and fast rules.

-15-

reasonableness of the accommodation and to whether it imposes an undue hardship. Cf. Vande Zande, 44 F.3d at 542-43. Plaintiff will often need to take such difficulties into account in proving whether the accommodation is facially practicable, and defendant will of course need to provide evidence of them in attempting to prove undue hardship. Indeed, where the costs of an accommodation are relatively obvious -- where they really are what they appear to be on the face of things -- plaintiff's burden and defendant's burden may in application be quite similar, even to the extent of being mirror images. Where the burdens will significantly differ is when the costs of an accommodation are not evident on the face of things, but rather are better known to the employer. Cf. Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1113 (9th Cir. 2000) (finding employer's "superior knowledge" as to certain matters relevant to determining extent of parties' burdens). For example, an employee's proposal that her work area be modified might be facially reasonable, but the employer may still show that, given the particular limitations on its financial resources, or other hidden costs, such accommodation imposes an undue hardship. See 42 U.S.C. § 12111(10)(B).

In the end, it is difficult to propound language as to the content of the parties' burdens much more specific than the language of

the statute.[6] Consequently, in many cases the dividing line between "reasonable accommodation" and "undue hardship" will be inexact -- but benignly so.  Given the inexactness of that dividing line, wise counsel for both parties will err on the side of offering proof beyond what their burdens require.  The summary judgment decisions of this court have often turned on the surprising failure by one party or the other to proffer any significant evidence in favor of their position.  See, e.g., Garcia-Ayala, 212 F.3d at 649; Ward, 209 F.3d at 36-37.

## B.  Request for Accommodation

We next address whether Reed has met her burden of proving that her requested accommodation was facially reasonable.  Ordinarily, this would involve an analysis of the accommodation at issue, which, in this case, would be permission to walk away from any stressful conflict, regardless of whether it was with a co-worker or a supervisor.  That analysis would turn in part on the particular circumstances of the workplace.  Some of the more obvious and visible circumstances, such as the general culture of the workplace, we might expect Reed to

---

[6]    Indeed, EEOC regulations do not offer a particularized definition of the term "reasonable accommodation."  They only give examples.  See 29 C.F.R. § 1630.2(o)(2).

address as part of her burden.  Other specifics that are more within the control or knowledge of the employer, such as its management strategy or its need to maintain a strict hierarchy, might better belong in LePage's defense.  Given the lack of such particulars in the factual record developed here, it would be difficult to say whether Reed's suggested accommodation is facially reasonable.

We need not concern ourselves with the reasonableness of Reed's accommodation, however, because Reed has failed to prove another essential element of her burden: that she ever sufficiently requested the accommodation in question.  This is the fatal flaw in Reed's case.  She never adequately put LePage on notice of her disability and need for accommodation. Specifically, Reed never made LePage sufficiently aware that she had a disability marked by occasional fits of rage and consequently needed some sort of <u>special</u> accommodation. Moreover, even had Reed made LePage so aware, and had she subsequently been granted an accommodation permitting her to walk away not only from conflicts with co-workers but also from conflicts with supervisors, she was never prevented from

invoking any such accommodation during her fateful meeting in June of 1996. These grounds suffice to dispose of her case.

The ADA imposes liability on an employer for "not making reasonable accommodations to the <u>known</u> physical or mental limitations" of an employee. 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Because an employee's disability and concomitant need for accommodation are often not known to the employer until the employee requests an accommodation, the ADA's reasonable accommodation requirement usually does not apply unless "triggered by a request" from the employee. Henry Perrett, Jr., 1 <u>Americans With Disabilities Act Handbook</u>, § 4.17, at 121 (3d ed. 1997) (collecting cases).[7] The employee's request must be "sufficiently direct and specific," giving notice that she needs a "special accommodation." <u>Wynne</u> v. <u>Tufts Univ.</u>, 976 F.2d 791, 795 (1st Cir. 1992) (quoting <u>Nathanson</u> v.

---

[7]    Sometimes the employee's disability may prevent the employee from requesting an accommodation, or sometimes the employee's need for an accommodation will be obvious; and in such cases, different rules may apply. <u>See</u> EEOC Enforcement Guidance, <u>infra</u>, at 405:7629. In this case, though, there is no suggestion in the record that Reed's mental illness hampered her ability to request an accommodation. Her disability was episodic, not continual, and she functioned normally most of the time.

Medical Coll. of Pa., 926 F.2d 1368, 1381 (3d Cir. 1991)). At the least, the request must explain how the accommodation requested is linked to some disability. The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace. See EEOC, Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, FEP (BNA) 405:7601, at 7605-06 (March 1, 1999) (request for new office chair because current one is "uncomfortable" does not provide sufficient notice that accommodation is needed due to a disability), available at http://www.eeoc.gov/docs/accommodation.html.[8]

Here, the record shows that, during her meetings with Norton and Pelletier following her altercation with the mechanic in March 1995, Reed gave scant indication that, due to a disability, she needed some special sort of accommodation as to conflicts at work, some permission to walk away from conflicts beyond that ordinarily granted to employees. She did not, for

---

[8] We note that we are not bound by EEOC guidance documents. General Elec. Co. v. Gilbert, 429 U.S. 125, 141-42 (1976).

example, explain to her supervisors that the altercation with the mechanic was due to her having bipolar disorder, which can lead to episodes of rage, and that as a result she needed a special accommodation. Nor did she reveal that the altercation had led her to be hospitalized for psychological trauma, which likewise could suggest the need for a special accommodation. Rather, all that happened was that her altercation with a co-worker came up in a meeting about her attendance, and Pelletier made the commonplace suggestion that in the future she walk away from such situations before they got out of hand. Indeed, it was such stock advice that Reed did not even have to "request" it: Pelletier brought up the idea on his own; Reed merely acquiesced in it.

Reed's attempt to dress up this advice as some sort of special accommodation, allowing her to walk away even from supervisors if their supervision became too stressful, ignores the context in which the advice was given. It was given in the aftermath of a fight Reed had had with a co-worker. Thus Norton understood the advice given Reed to be that, "if she ever got in a problem with a co-worker . . . , just leave . . . ; don't stay there and have harsh words." It was the same advice he gave to

-21-

all workers; its purpose was to prevent employees from getting into fights on the floor. Pelletier understood the advice similarly. Moreover, Reed was further advised that after walking away from a conflict, she should find a supervisor to help settle the matter -- again indicating that the sort of conflicts being contemplated were ones between Reed and her co-workers.

Taken in context, then, the only "accommodation" Reed ever "requested" was simply that she be permitted to walk away from conflicts with co-workers in order to go get a supervisor. As the district court recognized, it is a vastly different matter for an employee to be given permission to walk away from a supervisor engaged in the act of supervision. Again, had Reed revealed her mental illness and its consequences in any detail to her supervisors, they might have been expected to construe her self-perceived accommodation request differently. Reed neglected to do so. The only hint she gave of any disability was a vague reference to her therapist, who on earlier occasions had sent notes to LePage indicating Reed was being seen for depression. But Reed gave no notice of the aspect of her

illness relevant to the accommodation she sought, namely, her psychological inability to control rage.[9]

In any event, even were we to assume dubitante that Reed adequately requested an accommodation allowing her to walk away from conflicts with supervisors, Reed was never prevented from exercising such accommodation during her June 1, 1996 meeting with Callahan. At the meeting, after Reed grew angry with Callahan for refusing to discuss the possibility of a shift change, and amidst Norton's pleas that she calm down, Reed was not prevented from walking away. It is true that Callahan told Reed that if she walked out she would not work that day; but the record makes clear that all Callahan meant was that Reed could not begin her shift (which was to start in a few minutes) until finishing the return-to-work meeting. Even after Reed's initial outburst, Callahan explicitly reassured Reed that she was not threatening to fire her if she left. Nonetheless, Reed did not excuse herself in order to cool off; instead, she stayed in

_____

[9] Reed's efforts to do so after the incident with Callahan, in her discussions with Nedik, were too little, too late. Cf. Wynne, 976 F.2d at 796 n.3.

order to mount a belligerent, vituperative attack on Callahan, leaving the supervisor feeling physically threatened.

At no time did Reed ever ask to leave the room to calm down; at no time was such a request refused. Even had Reed earlier been granted general permission to walk away from conflicts with supervisors, such accommodation assumes that Reed would take the initiative and walk away.[10] Here she chose not to do so. She stayed, with the ensuing consequences. Reed was never stopped from walking away; nor was she fired for walking away. She was fired for verbally abusing and threatening her supervisor, when she could have avoided doing so. Thus, her

---

[10] Putting the matter another way, any accommodation so lenient as to excuse Reed for not taking the initiative to walk away under the circumstances of her meeting with Callahan would be unreasonable on the facts of this case. The same is true for any accommodation that would consider Callahan's words to Reed an obstacle to her taking such initiative.

case on reasonable accommodation fails.[11]  The ADA is not a license for insubordination at the workplace.

<u>Affirmed</u>.  Costs to appellees.

---

[11]  Reed argues as well that LePage failed to engage in an interactive process, which, according to EEOC regulations, "may be necessary" in order to determine an appropriate accommodation for an employee.  29 C.F.R. § 1630.2(o)(3); <u>see also</u> <u>Jacques</u> v. <u>Clean-Up Group, Inc.</u>, 96 F.3d 506, 515 (1st Cir. 1996).  This claim fails for the same reasons as articulated above: the employer's duty to enter into an interactive process typically must be triggered by a sufficient request for accommodation, as with the employer's more general duty to accommodate.  <u>See</u> EEOC Guidance, <u>supra</u>, at 405:7605.

Reed also raises a claim that she was disciplined differently than other employees.  The record provides no support for this contention.