**Michael MALDONADO Plaintiff**

v.

**MUNICIPALITY OF PONCE Defendant**

No. CIV. 99–2025CCC.

United States District Court, D. Puerto Rico.

March 19, 2002.

Carlos Fernández–Nadal, Ponce, PR, for Plaintiffs.

Ramón Dávila–Carlos, San Juan, PR, for Defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action under the American with Disabilities Act of 1990(ADA), 42 U.S.C. § 12117(a) and the Civil Rights Act of 1991, 42 U.S.C.1981(a). Plaintiff Michael Maldonado (Maldonado), who used to work as a policeman with the municipal police of defendant Municipality of Ponce (Municipality), sued the Municipality for its failure to provide him with a reasonable accommodation as required by the ADA after he developed a condition of lumbar myositis. Before the Court now are defendant's Motion for Summary Judgment (docket entry 28) and plaintiff's response (docket entry 36). Defendant requested leave to reply to plaintiff's opposition to the motion for summary judgment (docket entry 37). As the Court deems that there is no need for said reply, the request for leave to file it is DENIED.

The relevant undisputed facts are as follows: plaintiff Michael Maldonado (Maldonado) became a municipal police officer for the Municipality of Ponce in 1990. In July of 1997, while on active duty as a member of the Puerto Rico National Guard, he injured his left arm, left leg and lower back. *See* Exh. 1 of the Motion for Summary Judgment(MSJ). Apparently as a result of said accident, Maldonado became disabled, and on August 31, 1998 he applied for a reasonable accommodation with the Municipality. Exh. 4 of the MSJ. In the application, Maldonado requested a position in which he did not have to be either standing or seating for a long time, and expressed his willingness to be assigned to a position outside the Municipal Police. The application was supplemented on September 8, 1998 with a medical evaluation prepared by Dr. Luis R. Rivero, which described the condition affecting Maldonado as chronic lower back pain. As a result of said condition, Dr. Rivero reported in the evaluation form that Maldonado could not return to his regular functions and duties. Dr. Rivero further specified, based on Maldonado's job description, that among the duties he could

not perform were patrol, guard dependencies, deal with complaints or direct traffic. He could, however, issue tickets, guard dependencies as long as doing so did not require moderate or severe physical effort, submit cases before the courts and provide testimony, and collaborate with the Commonwealth police in cases in which no more than a light physical effort was required. *See* Exh. 7 to MSJ.

On October 16, 1998, Mrs. Olga Fas–Santiago, from the Office of Administration of Human Resources of the Municipality, sent a letter to Dr. Rivero requesting a medical reevaluation of Maldonado. Exh. 10 to MSJ. This new evaluation, performed by Dr. Rivero on October 15, 1998 (one day before Mrs. Fas–Santiago's letter was sent), confirmed his prior diagnosis of chronic lower back pain and reaffirmed his conclusion that Maldonado could not return to his regular functions and duties. Dr. Rivero stated that Maldonado could occupy an administrative position, making specific reference to an office job within the municipal police. Dr. Rivero noted in his remarks that Maldonado had served in such a position before, as a "réten [1]", upon a special request. Exh. 11 to MSJ.

It appears that Maldonado had also submitted to the Municipality a medical evaluation performed by Dr. Alexis Echevarría on August 15, 1997, as on March 5, 1999 the Director of the Office of Administration of Human Resources, Mrs. Ivonne Laborde–Negrón, wrote to Maldonado requesting from Dr. Echevarría a certification of his diagnosis, limitations, prognosis, treatment and alternatives for reasonable accommodation given his duties. On March 31, 1999, Maldonado submitted a

copy of a progress report from Dr. Echevarría which concluded that Maldonado had a "chronic iliolumbar myositis" condition. *See* Defendant's List of Uncontested Facts No. 13.[2] Dr. Echevarría observed in his progress notes that "no improvement had been obtained with partial rest, physical therapy and multiple oral analgesics," and categorically stated that *"[p]atient must not:* (a) lift objects heavier than 10lbs. (b) crawl or climb, (c) stand up or sit up longer than 30 mins. consecutively, (d) walk longer than 15 consecutive minutes..." Exh. 13 to MSJ (emphasis in original). A final note indicated that "[p]atient must not use regulation weapon." *Id.* Obviously unsatisfied with the copy of the progress notes submitted by Maldonado, on April 8, 1999 Mrs. Laborde–Negrón wrote to him once again stating that the document he had submitted, *i.e* the progress notes of Dr. Echevarría, did not constitute a medical certificate and failed to provide the information requested in the first letter. Exh. 14 to MSJ. Maldonado then submitted, on April 20, 1999, a prescription form signed by Dr. Echevarría which stated that he was given "orders not to lift heavy objects and not to walk longer than 15 consecutive mins." Defendant's List of Uncontested Fact No. 15; Exh. 15 to MSJ.

On June 3, 1999, Mrs. Laborde–Negrón invited Maldonado for an interview scheduled for June 8, 1999 to discuss his request for reasonable accommodation. Exh. 17 to MSJ; Defendant's List of Uncontested Fact No. 17. Present also at that meeting were Mrs. Ileana Parra, administrative assistant in the Office of Administration of Human Resources, and Colonel Gilberto Colón–Rodríguez, Commissioner of the

---

1. The term "retén" is usually used to describe the police officer who serves as an office clerk at the police station.

2. This, and all other facts not controverted by plaintiff in his Reply to Statement of Uncontested Facts (docket entry 36, pp. 1–5), are deemed to be admitted pursuant to Local Rule of Procedure 311(12).

Ponce Municipal Police. Defendant's List of Uncontested Fact No. 17. On June 16, 1999, Mrs. Laborde–Negrón sent a letter to Dr. Echevarría asking his opinion on whether Maldonado could perform the functions of a municipal police officer, inquiring on whether his condition was permanent or temporary, and inviting him to suggest tasks that could be performed by Maldonado in light of his previous statements on Maldonado's limited functions. Exh. 18 to MSJ. As a response, Dr. Echevarría provided a document entitled "Physiatrist Notes," dated July 1, 1999 (Exh. 19 to MSJ), in which he stated that Maldonado's "clinical condition remains about the same," but that he had "been authorized to return to his regular job" as "[a]t present he's able to perform most of his daily tasks as a policeman" and "[h]e's able to use regulation weapon." Dr. Irizarry also observed that Maldonado was "able to walk and stand up for 30 minutes consecutively; he must be allowed to take 4–5 minutes periods of rest every hour." In addition, he stated that "[h]e must not lift objects heavier than 10 lbs . . . ."

On September 13, 1999, the Interim Director of the Office of Administration of Human Resources, Mr. Rafael A. Parodi, wrote to Colonel Colón–Rodríguez to apprise him of the recommendations made by Dr. Echevarría in his latest report and requesting information on whether Maldonado could perform the functions of a municipal police officer. Exh. 20 to MSJ. Colonel Colón–Rodríguez replied to Mr. Parodi on September 15, 1999, informing him that based on the report of Dr. Echevarría and taking into consideration the functions required of a municipal police officer, Maldonado could not perform them and was unable to return to his job as a municipal policeman. Exh. 21 to MSJ. On September 23, 1999, Mr. Parodi then wrote

to Maldonado informing him that the accommodations suggested by Dr. Echevarría were not possible due to the functions required of a municipal policeman. Exh. 22 to MSJ.

Mrs. Laborde–Negrón has attested that the Municipality considered reassigning Maldonado to another position, but that there were no other vacant employment positions for which he qualified at the time that his request for reasonable accommodation was pending. Exh. 2 to MSJ. Both Mrs. Laborde–Negrón and Colonel Colón Rodríguez have affirmed that there are no permanent light duty positions for a police officer in the Ponce Municipal Police. Exh. 2 to MSJ, ¶ 22; Exh. 23 to MSJ, ¶ 7.

Although Maldonado's was on leave without pay until January 11, 2000, he failed to report to work on January 12, 2000. Exh. 2 to MSJ. This suit was filed in October 1999.

In its motion for summary judgment, the Municipality avers that plaintiff cannot perform the essential duties of his job as a police officer with or without a reasonable accommodation. In addition, it claims that the reasonable accommodation requested by Maldonado, if allowed, would require the creation of a permanent light duty position for police officers in the Municipality causing it undue hardship. Maldonado, in his opposition to the motion for summary judgment, avers that the Municipality could have reasonably accommodated him in the already existing position of "retén", which he describes as having "light duty tasks". Opposition, docket entry 36, at p. 5. In fact, he represents that he worked as a "retén" for almost a month when he first returned to work following his accident, id., at p. 7, although no evidence was submitted by him to establish that fact.[3]

---

**3.** We do note, however, that in the excerpt of

Maldonado's deposition submitted by defen-

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See Goldman v. First National Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *First Nat. Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Having reviewed the procedural standards that bind us in the adjudication of this matter, we briefly summarize the applicable substantive legal tenets.

 The ADA prohibits employment discrimination against qualified individuals with disabilities who can perform the essential functions of a job with or without reasonable accommodation. *See* 42 U.S.C. § 12112(a). The mandate of the ADA extends to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. *Id.* To establish a claim of disability discrimination under the ADA, a plaintiff must prove (1) that he or she was disabled within the meaning of the ADA; (2) that he or she was a qualified individual; and (3) that he or she was discharged because of her disability. *Phelps v. Optima Health, Inc.,* 251 F.3d 21, 24 (1st Cir.2001). "A qualified individual under the ADA is one 'able to perform the essential functions of [[his] position] with or without reasonable accommodation.'" *Id.* (citation omitted). "An 'essential function' is a fundamental job duty of the position at issue.... In the absence of evidence of discriminatory animus, courts generally give 'substantial weight' to the employer's judgment as to what functions are essential.... Other evidence also is relevant, including: written job descriptions, consequences of not requiring the function, work experience of past incumbents, and work experience of current incumbents.'" *Kvorjak v. Maine,* 259 F.3d 48, 55 (1st Cir.2001).

 Although it is far from certain whether plaintiff has met the first element of the ADA, *i.e.* being disabled within the meaning of the law,[4] defendant, as we have noted above, rests its dismissal request on plaintiff's alleged failure to establish the second element of the ADA test: that with or without reasonable accommodation he could perform the essential functions of

---

dant as its Exhibit 24 to the Motion for Summary Judgment, he explains that he performed as a "retén" upon returning to work after the accident. *See* Exh. 24, at p. 77. Dr. Rivero also made a reference to Maldonado having occupied said position in his medical evaluation. *See* Exh. 11 to MSJ.

4. "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity.... [A] claimant must further show that the limitation on the major life activity is 'substantial.'" *Toyota Motor v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002).

.

the job. Plaintiff, in fact, does not even maintain that he could have performed the essential functions of the job without a reasonable accommodation. His claim, instead, is that he could have performed the essential functions of his job *with* the reasonable accommodation requested from, but denied by, defendant. Under the ADA, plaintiff bears the burden of proving that the defendant could provide a reasonable accommodation for his disability but defendant bears the burden to show that the proposed accommodation would impose an undue hardship. The Court of Appeals recently distinguished these burdens as follows:

> In order to prove "reasonable accommodation," a plaintiff needs to show not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances. If plaintiff succeeds in carrying this burden, the defendant then has the opportunity to show that the proposed accommodation is not as feasible as it appears but rather that there are further costs to be considered, certain devils in the details.

*Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir.2001).

█ We find that plaintiff has utterly failed to meet his burden. Pursuant to the job description of municipal police officer (Exh. 26 to the MSJ) and the regulations applicable to the Ponce Municipal Police (Exh. 27 to the MSJ), among the essential duties of a municipal police officer at the Municipality of Ponce are preventive patrolling, the issuance of tickets for transit violations or infractions to municipal ordinances, guarding municipal and private dependencies, and arresting persons that commit crimes in his/her presence. Maldonado insists that the Municipality could

have reasonably accommodated him in the position of "retén," which he covets for allegedly being a light-duty position within the municipal police force, but fails to show how he would have been able to perform the essential functions of his job even while assigned to said position. "The fact that an employee might only be assigned to certain aspects of a multi-task job does not necessarily mean that those tasks to which [he] was not assigned are not essential." *Phelps,* 251 F.3d at 26. *Cf. Miller v. Illinois Dept. of Corrections,* 107 F.3d 483, 485 (7th Cir.1997) ("if an employer has a legitimate reason for specifying multiple duties for a particular job classification, duties the occupant of the position is expected to rotate through, a disabled employee will not be qualified for the position unless he can perform enough of these duties to enable a judgment that he can perform its *essential duties.*" (Emphasis in original.))

It seems obvious to us that as a municipal policeman, even while on light-duty assignment, at the very least Maldonado could have been summoned to assist in emergencies in which he would have been required to patrol, guard municipal and private dependencies, and/or perform arrests, among other duties. Given the limitations to Maldonado's physical capacity established in the final medical evaluation submitted by his doctor to the Municipality (Exh. 19 to the MSJ), *e.g.* that he could walk and stand up only for 30 consecutive minutes, had to be allowed to take 4–5 minutes periods of rest every hour, and could not lift objects heavier than 10 pounds, we are unable to conclude that he was able to perform said essential duties of a municipal police officer.

We note that Maldonado also requested accommodation in a position outside the municipal police force. He failed to show that such a vacant position existed, howev-

er. *Phelps*, 251 F.3d at 27. The evidence on record shows, instead, that there were no vacant employment positions for which he qualified at the time that his request for reasonable accommodation was pending. The ADA did not require defendant to create a new job. *Id.*

Thus, as plaintiff Maldonado could not perform the essential functions of his job with or without reasonable accommodation, he is not a qualified individual under the ADA, and cannot invoke its protection. Accordingly, defendant's motion for summary judgment (docket entry 28) is GRANTED. Judgment will be entered by separate order DISMISSING this case.

SO ORDERED.

## JUDGMENT

For the reasons stated in our Opinion and Order of this same date granting defendant's motion for summary judgment (docket entry 28), this action is hereby DISMISSED.

SO ORDERED AND ADJUDGED.