Peter **KINCH,** Plaintiff

v.

**QUEST DIAGNOSTICS, INC.,** Defendant.

**Civil Action No. 08–10082–WGY.**

United States District Court, D. Massachusetts.

Sept. 9, 2009.

Mitchell J. Notis, Ayanna O. McPhail, Mitchell J. Notis Attorney at Law, Brookline, MA, for Plaintiff.

Matthew A. Porter, Jackson Lewis LLP, Boston, MA, for Defendant.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Pursuant to Massachusetts General Laws chapter 151B and the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*; 42 U.S.C. § 2000e ("ADA"), on January 18, 2008, the plaintiff Peter Kinch ("Kinch") brought this action against his former employer Quest Diagnostics, Inc. ("Quest") for disability discrimination and failure to accommodate his limitations arising from Hepatitis C. Quest moved for summary judgment on June 12, 2009, *see* Quest Memorandum in Support ("Quest Mem.") [Doc. No. 14], and Kinch opposed the motion. *See* Kinch Opp'n [Doc. No. 22]. At a hearing on July 30, 2009, the Court took the matter under advisement.

The facts in the light most favorable to Kinch, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), are as follows. Kinch worked for Quest for approximately twenty-five years before he was terminated from employment in November 2005. *See* Quest Statement of Facts ("Quest Facts") [Doc. No. 20] at ¶¶ 2, 33. At that time, he worked as a Processor in Quest's Specimen Processing Department. *Id.*

Kinch has had Hepatitis C since the early 1990s. Kinch Statement of Facts ("Kinch Facts") [Doc. No. 21] at I.

Quest began experiencing problems with Kinch in 2002. Quest Facts at ¶ 6. Several poor annual reviews and written and oral warnings followed from 2002 through 2004, criticizing Kinch for, inter alia, failing to consistently meet production standards, taking too many breaks, demonstrating little initiative, and failing to adhere to performance standards. *Id.* at ¶¶ 7–17. The deficiencies continued in 2005. *Id.* at ¶ 18. On two occasions in April 2005, Kinch received verbal warnings. *Id.* When he failed to show improvement, Quest, in May 2005, placed Kinch on a personal improvement plan. *Id.* at ¶ 19–20. On June 8, 2005, Kinch received another verbal warning. *Id.* at ¶ 21.

Over the next several weeks, Kinch satisfied Quest's production requirements. *Id.* at ¶ 23. That did not last long, however. On July 15, 2005, Quest issued Kinch a Final Written Warning due to poor production. *Id.* at ¶ 25. Kinch, however, refused to sign the warning and told his supervisors that medications he was taking for Hepatitis C were affecting his work. *Id.* at ¶ 26. They referred him to Disability Services, which granted him a leave of absence effective July 18, 2005. *Id.* at ¶ 27.

Kinch's poor production resumed after his return to work on October 6, 2005. *Id.* at ¶ 30. On November 9, 2005, when a supervisor spoke with Kinch about his failure to meet production requirements, Kinch explained that he was unhappy with "what he does." *Id.* ¶ 31–32. Quest thereafter terminated him. *Id.* ¶ 33. The ter-

mination notice explained that he was producing only seventy five per cent of the expected output for his position. *Id.* ¶ 34.

Earlier that year, in March 2005, Kinch began treatment for Hepatitis C with the drug Pegintron. Kinch Facts [Doc. No. 21] at I. Around that time, he told his team leader that he was starting the treatment and gave her a booklet describing the possible side effects of the medication. *Id.* ¶ II. He also told his coworkers about the treatment and possible side effects. *Id.* During his performance reviews in April, May and June, 2005, however, Kinch never indicated to his supervisors that his poor performance was caused by the medical treatment he was undergoing. Quest Facts ¶¶ 18, 20, 22.

## II. ANALYSIS

### A. Failure to Accommodate

■ Under both Massachusetts and federal law, in order to prove that Quest failed to provide reasonable accommodation, Kinch must demonstrate that: "1) he has a physical or mental impairment that substantially limits one or more major life activities, 2) with or without reasonable accommodation, he was a qualified individual able to perform the essential functions of the position involved and 3) the employer, despite knowing of his disability, did not reasonably accommodate it."[1] *See Fiumara v. President and Fellows of Harvard College*, 526 F.Supp.2d 150, 156 (D.Mass.2007) (Gorton, J.) (citing *Estades–Negroni v. Associates Corp. of North*

---

1. The MCAD has described the elements a complainant must show as follows: (1) she is a "handicapped person;" (2) she is a "qualified handicapped person" capable of performing the essential functions of a particular job; (3) who needed a reasonable accommodation to perform her job; (4) Respondent was aware of the handicap and the need for a reasonable accommodation; (5) Respondent was also aware, or through a reasonable investigation could have become aware, of a means to reasonably accommodate the handicap; and, (6) Respondent failed to provide Complainant the reasonable accommodation. *Priscilla Hall & MCAD v. Massachusetts Dep't of Mental Retardation*, 99–BEM1426, 2005 WL 2994158, at *15 (MCAD Sept. 12, 2005).

*America,* 377 F.3d 58, 63 (1st Cir.2004); *Russell v. Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 772 N.E.2d 1054 (2002)).

Quest does not appear to challenge the first two elements.

The third element requires Kinch to prove that Quest was aware of the disability and did not reasonably accommodate it. Typically, an employee must request an accommodation. That obligation "stems from the basic principle that an employer is not required to accommodate a need that it does not know exists." *Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination,* 441 Mass. 632, 649 n. 21, 808 N.E.2d 257 (2004). The Supreme Judicial Court has explained that "for an employee's actions to constitute a request for accommodation, they must make the employer aware that the employee is entitled to and needs accommodation. Specifically, the request must let the employer know that the employee is a qualified handicapped person, and that the employee is currently unable either to perform the essential functions of his job or to enjoy equal terms, conditions, and benefits of employment." *Id.* In *Ocean Spray,* the Supreme Judicial Court concluded that an employee had made an adequate request for accommodation of his vision impairment. 441 Mass. at 649–50, 808 N.E.2d 257. There, the employee had submitted to his human resources manager three letters from doctors that supported his claim that the requirements of his job exceeded his physical capabilities, and the employer took no action in response. *Id.* at 635–36, 808 N.E.2d 257.

In this case, rather than arguing that he made a valid request for accommodation, Kinch contends that such a request was not required because Quest should have recognized his need for reasonable accommodation. *See* Kinch Opp'n at 10. He points to Guidelines issued by the Massachusetts Commission Against Discrimination ("MCAD"), which provide:

> Where an employee has not requested reasonable accommodation, an employer's duty to offer reasonable accommodation may still be triggered if the employer knows or should know that the employee is handicapped and requires reasonable accommodation. An employer should know that an employee is handicapped and requires reasonable accommodation if a reasonable person in the employer's position would know the employee was handicapped and required reasonable accommodation.

*Massachusetts Commission Against Discrimination Guidelines: Employment Discrimination of the Basis of Handicap* (1998), http://www.mass.gov/mcad/disability1a.html.[2] The U.S. Equal Employment Opportunity Commission ("EEOC") has promulgated similar guidelines. *See* EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* at question 40 (Oct. 17, 2002), http://www.eeoc.gov/policy/docs/accommodation.html ("[A]n employer should initiate the reasonable accommodation interactive process without being asked if the employer: (1) knows that the employee has a disability, (2) knows, or has reason to know, that the employee is experiencing workplace problems because of the disability, and (3) knows, or has reason to know, that the disability prevents the employee from requesting a reasonable accommodation."). The First Circuit has cited these guidelines and noted

**2.** The MCAD Guidelines are issued pursuant to Massachusetts General Laws chapter 151B, section 2.

that the rule requiring an employee to request an accommodation may not apply when the employee's need for an accommodation is "obvious." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 n. 7 (1st Cir.2001).

Kinch contends that there is a question of fact whether a reasonable employer in the position of Quest between March 2005 (when Kinch gave his supervisor a booklet describing side effects of medications Kinch was intending to take) and July 2005 (when he received the final written warning) would have known that he was handicapped and needed reasonable accommodation. Kinch Opp'n [Doc. No. 22] at 8, 11. He relies on *Priscilla Hall*, see note 1, *supra*, where a Hearing Officer of the Massachusetts Commission Against Discrimination concluded that an employer was "clearly aware" of an employee's disability and need for a reasonable accommodation. *Priscilla Hall*, 2005 WL 2994158, at *16. There, the employee had "regularly submitted doctors' notes containing numerous work-related restrictions related to her medical conditions" and the employer had granted accommodations to the employee as a result of her medical condition and confirmed her "Handicapped Status." *Id.* In other words, there had been extensive back and forth between the parties with respect to the employee's condition. Here, in contrast, Kinch merely gave his supervisor a booklet describing possible side effects of a medication he planned to take, and has presented no evidence that he brought to Quest's attention that the medications *actually* were having a negative impact on his work. Because Kinch has not presented any evidence that his need for accommodation was "obvious," Quest is entitled to summary judgment in its favor on this claim. *Reed v. LePage Bakeries, Inc.*, 244 F.3d at 261 n. 7.

## B. Disability Discrimination

 It is unclear whether Kinch has abandoned his disability discrimination claim, and the Court will address it briefly. Kinch must prove: 1) he has a disability; 2) with or without reasonable accommodation, he was a qualified individual able to perform the essential functions of the position involved; and 3) Quest discharged him because of his disability. *See Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 646 (1st Cir.2000); Mass. Gen. Laws c. 151B, § 4(16). The Court must apply the familiar three-stage burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 127–28, 686 N.E.2d 1303 (1997).

 Quest does not challenge Kinch's showing on the first stage, perhaps because Kinch undoubtedly fails his third stage burden to show that Quest's stated reason for his termination was pretextual and to persuade the factfinder that the pretext masks the forbidden discrimination. Given the three year history of poor performance evaluations, many of which occurred long before Kinch began taking medications to treat Hepatitis C and pertained to deficiencies that were unrelated to Hepatitis C, Kinch has failed to show a pretext.

## III. CONCLUSION

Quest's motion for summary judgment [Doc. No. 13] is ALLOWED.

SO ORDERED.